IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| PATRICIA MCDOWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-3007 |
| | ) | |
| BOSTON SCIENTIFIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

This is a products liability action.

It was originally filed in the Circuit Court of Cook County, Illinois.

It was then removed to the Northern District of Illinois.

Then on January 9, 2018, the case was transferred to the Central District of Illinois.

Pending is the Defendant's Motion to Dismiss.

Allowed in part and denied in part.

## I.    FACTUAL ALLEGATIONS

Plaintiff Patricia McDowell alleges she suffered personal injuries and damages as a result of being implanted with an unreasonably dangerous device, the Greenfield Filter, which is intended for the prevention of blood clot related

complications.  Defendant Boston Scientific Corporation developed, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, processed, sold, distributed and/or marketed the Greenfield Filter to be implanted into patients throughout the United States.  The Plaintiff's claims for damages relate to the Defendant's design, manufacture, sale, testing, marketing, labeling, advertising and/or distribution of the Greenfield Filter.

The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower extremities.  Blood clots or thrombi can travel from the blood vessels in the leg and pelvis, through the IVC and into the lungs, causing a pulmonary embolism.  These thrombi can also develop in the deep leg veins and are referred to as deep vein thrombosis ("DVT").  Individuals who are at risk of clotting are often treated with anticoagulants like Heparin, Warfarin or Lovenox to reduce the risk.  However, because anticoagulants are contraindicated for certain individuals, doctors may recommend implantation of an IVC filter to reduce the risk of a pulmonary embolism.  An IVC filter is not a cure for DVT.  Rather, it is designed to prevent blood clots from traveling from the lower extremities to the heart and lungs.  It is inserted into the IVC and works by trapping and filtering clots that form in the lower portions of the body.

The Greenfield Filter has been on the market since the 1970s.  It is a permanent IVC filter.  It is not designed to be retrieved and has no retrieval option

once implanted in a patient. Temporary or retrievable filters began to be marketed in the early 2000s. Unlike permanent filters, a retrievable filter is designed to be removed from a patient when the risk of pulmonary embolism or DVT has passed.

In 1989, the Defendant obtained U.S. Food and Drug Administration ("FDA") clearance to market the Greenfield Filter and/or its components under Section 510(k) of the Medical Device Amendment. This allowed the Defendant to bypass the requirement to have the Greenfield Filter independently evaluated by the FDA or its experts. Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of said device.

An article published in 2007 in the American Journal of Roentgenology discusses the possibility of malfunctioning IVC filters causing chest pains in patients. The article provides that because of certain complications, retrievable filters are increasingly being used to protect from pulmonary embolism.

In 2010, the FDA issued a warning against leaving inferior filters, both permanent and retrievable, implanted in patients for extended periods due to the potential of adverse health complications. The FDA issued a similar alert in 2014. The FDA published studies concerning risks of doctors not retrieving IVC filters intended for short-term placement, exposing patients to problems caused by fractured implants and migrating implants, which can be fatal.

Section 502(a) and 201(n) of the Federal Food Drug and Cosmetic Act ("the Act") requires the Defendant to fully and accurately disclose information in detail relating to adverse effects of the Greenfield Filter. The Act prohibits the Defendant from minimizing these risks and promulgating misleading claims that the Greenfield Filter is safer than the other IVC filters on the market or that IVC filters in general are a safer long-term alternative to anticoagulant therapies.

On August 20, 2006, the Plaintiff was implanted with the Greenfield Filter. She had been hospitalized for DVT. It was determined that Plaintiff would undergo a surgical implant of an IVC filter to prevent further DVT from reoccurring. The Greenfield Filter was implanted into the Plaintiff at Blessing Hospital in Quincy, Illinois. Based on the advice given, the Plaintiff agreed to the implantation of the IVC Filter.

The Plaintiff has never been considered for revision or removal of the device by any medical professionals, nor was she recommended to consider removal upon her surgical discharge. On or about December 24, 2014, the Plaintiff experienced intense pain she described as occurring in the lower left quadrant of her abdomen. She required hospitalization, receiving a CAT Scan at Quincy Medical Group but the scan concentrated on her intestines, omitting any and all evaluations of her IVC filter at the time.

On or about November 3, 2017, the Plaintiff again experienced sharp pain within her groin region, near the IVC implant site. She received another CAT scan on her abdominal region. Her pains were noted to recur intermittently and Plaintiff suffered from them for about six months before obtaining medical treatment. The CAT Scan noted that the tip of the filter was just below the level of the larger right renal vein and left renal vein, directly correlating with the localized region where the Plaintiff experiences pain.

The symptoms suffered by the Plaintiff are similar to those of patients in case studies discussed in medical literature which note complications caused by IVC filters such as perforation. The Plaintiff alleges the evidence shows she has suffered perforation and injury from the Defendant's IVC Filter device. She will continue to suffer pain from the perforation of the IVC filter. She is also at an unacceptably high risk of suffering from other well-known IVC filter complications.

The most recent alert issued by the FDA in 2014 regarding IVC filters strongly advises physicians to remove patient's filters within two months of implantation or when the issues of DVT and pulmonary embolism have diminished.

The Plaintiff alleges that Defendant knew its IVC filters were defective in design and knew the defect was attributable to the design's failure. The Defendant failed to disclose to physicians, patients or Plaintiff in detail that its permanent IVC filter, the Greenfield Filters, were subject to breakage, collapse, migration, causing

thrombus and/or the appropriate degree of risk of damage to the vena cava wall and other complications. The Defendant continued to promote the Defendant's IVC filters, including the Greenfield Filter, as safe and effective, even though the clinical trials that had been performed were not adequate to support long term efficacy. The Defendant concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the IVC filters, including the Greenfield Filter. The Defendant failed to provide sufficient warnings and instructions that would have put the Plaintiff and general public on notice of the dangers and adverse effects caused by implantation of the Greenfield Filter.

The Plaintiff alleges that as a direct and proximate result of the Greenfield Filter, the Plaintiff is at risk of suffering from serious health complications due to the long-term implant of the filter. The complications that can be attributable to the Greenfield Filter include the increased risk of DVT despite the implanted device, constant pains in the abdominal region, the risk of the filter migrating to the other parts of the vena cava, heart, lungs or other organs, DVT, fracture or breakage of the filter, perforation of the vena cava or other soft tissue and complications. As a result, the Plaintiff suffered severe injuries, including but not limited to economic damages, severe permanent injuries, emotional distress and the psychological trauma of living with a defective product implanted in Plaintiff's body.

The Plaintiff's amended complaint includes several claims. Count I is a negligence claim. Count II is a strict products liability: defective design claim. Count III is a strict products liability: manufacturing defect claim. Count IV is a strict products liability: failure to warn claim. Count V is a breach of express warranty claim. Count VI is a breach of implied warrant of merchantability claim. Count VII is a breach of implied warranty of fitness for a particular purpose claim. Count VIII is a negligent misrepresentation claim.

The Defendant has moved to dismiss each of the Plaintiff's claims. First, the Defendant contends that the amended complaint fails to allege plausible claims as to each of the counts. The Defendant further asserts the Plaintiff's strict liability, negligence and warranty claims are time-barred under Illinois law.

## II. LEGAL STANDARD

At this stage, the Court accepts as true all the facts alleged in

the complaint and draws all reasonable inferences therefrom. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[A] complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal quotation marks omitted). Courts must consider whether the complaint states a "plausible" claim for relief. *See id.* The complaint must do more than assert a right to relief that is

"speculative." *See id.* However, the claim need not be probable: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *See Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.*

## III. DISCUSSION

A. <u>Plausibility</u>

The Defendant first asserts that the Plaintiff's complaint does not plausibly allege an injury. Specifically, although the Plaintiff states she "suffered perforation and injury from defendant's IVC Filter device" and she received two CAT Scans since first experiencing pain in 2014, she does not allege that either scan shows a perforation. The Defendant also asserts that a claim for the risk of future injury cannot be sustained under Illinois law.

Paragraph 57 of the amended complaint states:

> On or about November 3, 2017 Plaintiff . . . again experienc[ed] sharp pains within her groin region, near the IVC implant site. Ms.

McDowell received another CAT Scan on her abdominal region. Her
pains were noted to recur intermittently and Plaintiff suffered from them
for a period of 6 months before obtaining medical treatment. The CAT
Scan noted that the tip of the filter was just below the level of the larger
right renal vein and left renal vein, directly correlating with the localized
region where Ms. McDowell experiences pain.

In paragraph 58, the Plaintiff notes that her symptoms are similar to those discussed
in medical literature discussing chronic pain in the region of IVC filter implantation.
Plaintiff alleges she has suffered perforation and injury from Defendant's IVC Filter
Device and remains at a high risk of suffering additional complications.

The Court concludes that although more factual detail could have been
alleged, the Plaintiff has provided sufficient facts to allege a plausible claim at the
pleading stage. Given that the Plaintiff has sufficiently alleged certain present
injuries, a claim for future injuries is not entirely speculative. Accordingly, the Court
will allow the claims to proceed to discovery and deny the motion to dismiss on this
basis.

B. Strict liability claims for manufacturing and design defect

The Defendant contends the Plaintiff has failed to state plausible strict

liability claims for design and manufacturing defect. To state a strict products
liability claim based on either theory, a plaintiff must allege "(1) a condition of the

product as a result of manufacturing or design, (2) that made the product unreasonably dangerous, (3) and that existed at the time the product left the defendant's control, and (4) an injury to the plaintiff, (5) that was proximately caused by the condition." *Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 543 (2008). "A manufacturing defect occurs when one unit in a product line is defective, whereas a design defect occurs when the specific unit conforms to the intended design but the intended design itself renders the product unreasonably dangerous." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App.3d 490, 497 (1st Dist. 2010).

The Defendant claims the amended complaint does not adequately allege a defect, or how a defect proximately caused the Plaintiff's injury. The amended complaint includes conclusory allegations that her Greenfield Filter "contains a condition or conditions which Defendant did not intend, at the time it left Defendant's control and possession," and that her injuries were "[a]s a result of the condition or these conditions" and the direct and proximate result of the Greenfield Filter's manufacturing defects." She further alleges that the product was "unreasonably dangerous" and that the "unreasonable risk of serious harm" from the Greenfield Filter renders Boston Scientific "strictly liable for [her] injuries and damages proximately caused by [her] use of the product." The Defendant contends these legal conclusions and vague references to a "malfunction" and the Greenfield Filter's "[r]ecurved hooks" are insufficient to state a claim.

The Plaintiff claims she has alleged the Defendant's IVC device was prone to causing injuries after long-term use, without adequate warning. The Plaintiff has also alleged the defect in the device is unreasonable and of insufficient strength. Moreover, the Plaintiff alleges that the structural integrity of the IVC filter cannot withstand normal placement within the human body.

The Plaintiff further states that her amended complaint references the Defendant's claims that its IVC filter device had "Trusted Performance, Timeless Design." The Defendant also claims its "Recurved hooks are designed to provide protection against penetration" and possessed "Proven Stability." Moreover, the Defendant represented the IVC filter should have been stable from its original implanting position. The Defendant also stated that a properly manufactured device that did not have a physical defect in the parts, particularly the "recurved hooks," should not experience the complications suffered by the Plaintiff. The Plaintiff asserts that evidence of her injuries, along with the Defendant's own claims that the device's manufacture made it unsuitable for long-term use, makes a manufacturing defect a likely cause of Plaintiff's injuries.

As for the design defect claims, the Plaintiff alleges an alternative design would have mitigated the issues with the Plaintiff's device. The failed design of the Defendant's IVC filter led other medical manufacturers to design and sell retrievable filters, with the FDA recommending removal after a short duration. The alternative

designs to the Defendant's device allow IVC filters to be easily removed after the risk of pulmonary embolism and DVT passes. The alternative design mitigates the problems of the Greenfield Filter, in helping to eliminate the risks associated with long-term implants.

Upon considering the Plaintiff's allegations, the Court concludes that Plaintiff has alleged sufficient detail to put the Defendant on notice of the strict liability manufacturing and design defect claims. That is all the Plaintiff must do at this stage. *See Tyler v. Boston Scientific Corp.*, 2018 WL 2220531, at *3 (N.D. Ill. 2018) (noting that plaintiff "alleges the defective product, how and when he received it, approximately when his injury occurred, and the complications that arose from the Greenfield filter's implantation," which is sufficient under Rule 8).

Accordingly, the Court will deny the motion to dismiss and allow the case to proceed to discovery on the Plaintiff's design defect and manufacturing defect claims.

C. Strict liability failure to warn

In order to state a failure to warn claim, the Plaintiff must allege that Defendant "did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware." *Salerno*, 402 Ill. App.3d at 499. The manufacturer has this duty if "the product

possesses dangerous propensities and there is unequal knowledge with respect to the risk of harm, and the manufacturer, possessed of such knowledge, knows or should know that harm may occur absent a warning." *Id*.

The Defendant alleges the Plaintiff does not reference any of the warnings in the directions for use, which warns of perforation. The "**POTENTIAL ADVERSE EVENTS**" section of the directions for use warns of "[p]erforation of the vena cava, adjacent blood vessels or organ by one or more hooks." Therefore, the Defendant claims the directions for use warns of the very injury alleged by the Plaintiff. The product webpage and brochure also warns of complications and adverse effects, including "[p]erforation of the vena cava, adjacent blood vessels or organ by one or more hooks."

The Plaintiff alleges that despite the Defendant's knowledge that the IVC Filter was supposed to be for short-term usage, the product was marketed for long-term usage.

The Defendant further asserts the Plaintiff fails to allege any connection between an alleged failure to warn on one hand and her implanting physician on the other. The Plaintiff contends that Defendant inappropriately instructed the Plaintiff's physician on the proper use of the IVC Filter. While the FDA states that IVC Filters should be removed after the risk of pulmonary embolism and DVT have

passed, the Defendant instructed that the IVC Filter was safe and effective for long-term use.

The Plaintiff cites the learned intermediary doctrine and claims the Defendant did not disclose unreasonably dangerous conditions or instruct on the proper use of the product when the average consumer would not be aware. The manufacturer of a medical device generally has a duty to warn "physicians or other health professionals who may prescribe the device of the product's known dangerous propensities . . . [and] physicians, using their medical judgment, have a duty to convey the warnings to their patients." *Hansen v. Baxter Healthcare Corp.*, 198 Ill.2d 420, 430 (2002).

The Plaintiff further alleges that the Defendant failed to disclose to physicians, patients or Plaintiff the necessary detail that the Greenfield Filter implanted in Plaintiff was subject to a higher risk of breakage, collapse, mitigation, causing thrombus and/or the appropriate degree of risk of damage to the vena cava wall and other complications due to its permanent nature. Moreover, the Defendant did not warn that the IVC Filter was subject to migration of the filter to the other parts of the vena cava, the heart or other organs. The Defendant also did not address the increased risk of all complications due to its permanent nature. Additionally, the Plaintiff contends she has established reliance on her implanting physicians who were not adequately warned.

The Defendant correctly notes that the directions for use of the product include a warning of certain of the primary dangers of the IVC Filter—some of which led to the Plaintiff's injury. However, the amended complaint includes allegations relating to the marketing of the product, the risks and complications associated with its permanent nature and/or whether physicians were appropriately instructed. When these allegations are accepted as true, the Court finds that Plaintiff has asserted a plausible strict liability claim for failure to warn.

Accordingly, the Court will deny the motion to dismiss that claim.

D. Negligence

To state a negligence claim, "a plaintiff must establish the existence of a duty of care owed by the defendant, a breach of that duty, an injury proximately caused by that breach and damages resulting therefrom." *Salerno*, 402 Ill. App.3d at 501. "The manufacturer has a nondelegable duty to design reasonably safe products." *Id*. "[T]he threshold question is not whether the product could have been made safer, but whether it is dangerous because it fails to perform in the manner reasonably expected in light of its nature and intended function." *Id*.

When the allegations of the amended complaint are taken as true, the Defendant had a duty of reasonable care in manufacturing and selling a product that was not defective or unreasonably dangerous. This included a duty to warn of the

risks, dangers and side effects of the Greenfield Filter.  The Plaintiff alleges the Defendant breached that duty and that injuries resulted therefrom, including constant pains in the abdominal region and perforation.  The Plaintiff has also alleged damages due to the breach.  That is sufficient at this stage.  Accordingly, the Plaintiff has asserted a plausible negligence claim.

E.  Breach of warranty

(1) Implied warranty

The Plaintiff has asserted claims for breach of the implied warranties of merchantability and fitness.  Under Illinois law, a claim for breach of the implied warranty of fitness for a particular purpose requires that "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods."  810 ILCS 5/2-315.  Although the Plaintiff alleges the purpose of the Greenfield Filter was for other than its ordinary use, she describes the distinction as between short-term implantation and permanent implantation.  The Greenfield Filter's ordinary use remained to treat pulmonary embolisms and DVT.  The amended complaint states it was intended "for the prevention of blood clot related complications."  Certainly, the Defendant would have no knowledge of any

other purpose for its use. *See Tyler v. Boston Scientific Corp.*, 2018 WL 2220531, at *5 (N.D. Ill. 2018).

Accordingly, the Court will allow the Defendant's motion to dismiss the claim for breach of implied warranty of fitness for a particular purpose.

To state a claim for breach of implied warranty of merchantability, a plaintiff must allege that (1) defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect. *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp.2d 741, 748 (N.D. Ill. 1999). "[T]he goods must be . . . fit for the ordinary purpose for which the goods are used." *Id*. The Defendant contends the Plaintiff's conclusory allegations do not provide proper notice of the claim.

The gravamen of the Plaintiff's amended complaint is that the Greenfield Filter is not designed to remain inside the IVC indefinitely and that it should not be marketed as a permanent filter. In other words, the Plaintiff is asserting the product is not fit for the ordinary purpose for which it is used. Accordingly, the Court finds that Plaintiff has asserted a plausible claim for breach of implied warranty of merchantability.

(1) Express warranty

An express warranty "obligates the seller to deliver goods that conform to the

affirmation, promise, description, sample or model." *Mydlach v. DaimlerChrysler Corp.*, 226 Ill.2d 307, 320 (2007). The Defendant contends the Plaintiff does not allege that she or her physician relied on any of the information on the Defendant's webpage or the Greenfield Filter's product design. Moreover, the amended complaint does not say how any of the statements formed the basis of the bargain.

The Plaintiff claims she and her physician relied on affirmations such as "Trusted Performance," "Timeless Design," "Proven Stability," "Established Filter Performance," "Filter Design Promotes Clot Lysis," and "Recurved hooks are designed to provide protection against penetration." Paragraph 146 of the amended complaint states:

> Members of the medical community, including physicians and other healthcare professionals, relied upon Defendant's representations and express warranties in connection with the use recommendation, description, and implantation of the Greenfield Filter. Had Plaintiff's physicians been properly equipped with knowledge of the risks and functions of the IVC Filter that varied from the express warranty, they would not have Recommended this implant device to the Plaintiff, PATRICIA MCDOWELL.

The Plaintiff's allegations are sufficient to assert a plausible claim for express warranty. The Defendant's motion to dismiss that claim will be denied.

(2) Negligent misrepresentation

"To state a claim for negligent misrepresentation, a plaintiff must allege: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 332 (Ill. 2006).

For the reasons noted throughout this Order, the Plaintiff's amended complaint includes allegations which, if true, would satisfy each of the elements for negligent misrepresentation. Accordingly, the Plaintiff has asserted a plausible claim and the Defendant's motion to dismiss will be denied.

(G) Whether claims are time-barred

(1)

Negligence and strict liability claims for personal injuries must be filed within two years of accrual. 735 ILCS 5/13-202. Generally, a cause of action for personal injuries must be filed within two years of accrual. *See Golla v. General Motors Corp.*, 167 Ill.2d 353, 360 (1995). The discovery rule alleviates the potential harsh consequences by postponing the commencement of the applicable statute of

limitations until "the injured plaintiff knows or reasonably should know that he has been injured and that this injury was wrongfully caused." *Id.*

The Defendant notes that Plaintiff alleges she "required hospitalization" for "intense pain" in the area of her implanted Greenfield Filter on December 24, 2014. The Plaintiff's original complaint was filed on October 11, 2017, more than two years after the statute of limitations expired on December 24, 2016. Therefore, the Defendant asserts the negligence and strict liability claims are time barred.

The Plaintiff states that paragraph 56 of her amended complaint alleges that the CAT Scan she received on December 24, 2014 "concentrated on her intestines, omitting any evaluation of her IVC filter at the time." Accordingly, the Plaintiff contends she had no reason to believe in 2014 that her pains were caused by her IVC filter. Paragraph 57 of the amended complaint states that on November 3, 2017, following another CAT Scan on her abdominal region, the Plaintiff first possessed knowledge of the injury and its potential governing cause. The amended complaint states that "[t]he CAT Scan noted that the tip of the filter was just below the level of the larger right renal vein and left renal vein, directly correlating with the localized region where Ms. McDowell experiences pain."

Upon accepting as true the allegations of the amended complaint and drawing all inferences in favor of the Plaintiff, the Court concludes that Plaintiff has plausibly

alleged that she filed suit within two years of when she knew or reasonably should have known that she was injured and the cause of the injury. Accordingly, this portion of the Defendant's motion to dismiss will be denied.

(2)

The Defendant also alleges the Plaintiff's warranty claims are time-barred. A breach of contract claim is subject to a four-year statute of limitations. *See* 810 ILCS 5/2-725. The limitations period "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 810 ILCS 5/2-725(2).

The Defendant alleges the amended complaint does not identify any warranty, much less one that extends to future performance. Accordingly, the Defendant alleges any warranty claims began to run when the Greenfield Filter was implanted on August 20, 2006, and her original complaint was not filed within four years.

The Plaintiff asserts she has alleged that Defendant made both an express and implied warranty in its marketing and sale material when stating that its product was for long-term use. It also promised that the device in question could be safely used

as a permanent filter. Based on this representation, the Plaintiff asserts there was an expectation of future performance. The Plaintiff contends, therefore, the breach occurred upon discovery of the defect on November 3, 2017, and the action accrued then.

At this stage, the factual disputes regarding future performance and accrual must be resolved in the Plaintiff's favor. The Plaintiff has plausibly alleged that the warranty claims were filed within the limitations period. The motion to dismiss on the basis that the claims are time-barred will be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court will allow the Defendant's motion to dismiss the implied warranty of fitness for a particular purpose, which is asserted in Count VII, deny the other portions of the motion.

Ergo, the motion of Defendant Boston Scientific Corporation to dismiss the Plaintiff's amended complaint [d/e 23] is ALLOWED in part and DENIED in part.

The motion is Allowed as to Count VII and Denied as to the other counts.

The Defendant shall file an answer in accordance with the Federal Rules of Civil Procedure.

This case is referred to United States Magistrate Judge Tom Schanzle-Haskins for the purpose of holding a Rule 16 Scheduling Conference.

ENTER: November 27, 2018

FOR THE COURT:

/s/ *Richard Mills*

Richard Mills

United States District Judge